IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

UNITED STATES OF AMERICA,          )
                                   )
          Plaintiff,          )
                                   )
v.                                 )          No. 3:19-CR-149-PLR-DCP
                                   )
PIO JOSE ALEMAN-DUARTE,            )
                                   )
          Defendant.          )

## MEMORANDUM AND ORDER

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation regarding disposition by the District Court as may be appropriate.  Defendant Aleman-Duarte is alleged [Doc. 11] to be an alien and is charged with illegal reentry after a prior removal or deportation in violation of 18 U.S.C. § 1326(a).  The Government has asked the Court to detain the Defendant pending trial.[1]  The Defendant moves [Doc. 22] the Court to release him pending his trial, arguing that the Bail Reform Act, 18 U.S.C. § 3142(f), requires his release without a detention hearing in this case.  He contends that the Government is not entitled to a detention hearing, because he is not charged with a crime specified in 18 U.S.C. § 3142(f)(1)(A)-(E), he does not present a serious risk of flight, and he does

---

[1] When the Government moved for detention at the Defendant's initial appearance on a criminal complaint, Defendant Aleman-Duarte requested a detention hearing.  A detention hearing was set for August 8, 2019, and was reset, at the Defendant's request, to September 5, 2019.  On September 4, 2019, the Defendant waived [Doc. 9] his right to a detention hearing, reserving the right to request a detention hearing at a later time.  On September 25, 2019, Defendant again waived [Doc. 15] and reserved his right to a detention hearing at his initial appearance and arraignment on an Indictment.  The Defendant is presently detained, following his waiver and pursuant to an Order of Detention [Doc. 16].

not present a serious risk of obstruction of justice or intimidation of a witness or juror. The Defendant asks the Court to release him to live with his cousin Ms. Liliana Vessy-Herrera in her home in Philadelphia, Pennsylvania.

The Court held a motion hearing on the Defendant's Motion for Pretrial Release [Doc. 22] on December 16, 2019. Assistant United States Attorney William A. Roach, Jr., appeared on behalf of the Government. Assistant Federal Defender Mary Margaret Kincaid represented Defendant Pio Jose Aleman-Duarte, who was also present and participated with the aid of an interpreter. The Court heard the oral arguments of counsel and requested that the United States Probation Officer check into the Defendant's proposed living situation and amend the Pretrial Services Report, with information on the suitability of the proposed conditions. The Court asked the parties to file supplemental briefs on or before December 30, 2019. The Probation Officer submitted an amended Pretrial Services Report to the Court and the parties. The Defendant timely filed a Brief on Motion for Pretrial Release [Doc. 25] and an amended brief [Doc. 26]. The Government timely filed a Response to Amended Pretrial Services Report [Doc. 27].

For the reasons discussed herein, the Court finds that Defendant Aleman-Duarte poses a serious risk of flight and that no combination of conditions will reasonably assure his appearance at trial. Accordingly, his Motion for Pretrial Release [**Doc. 22**] is **DENIED**, and he is **ORDERED DETAINED** pending further proceedings in this case.

## I.    ANALYSIS

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). Our Supreme Court has held that "the provisions for pretrial detention in the Bail Reform Act of 1984 fall within

that carefully limited exception." *Id.* Congress enacted the Bail Reform Act ("the Act") in order "to ensure the appearance of criminal defendants at judicial proceedings." *United States v. Veloz-Alonzo*, 910 F.3d 266, 270 (6th Cir. 2018) (observing that assuring appearance at trial is one of the "primary purposes" of the Act); *United States v. Silvestre-Gregorio,* No. 2:18-CR-155-JRG-MCLC, Doc. 61, at 4 (E.D. Tenn. June 21, 2019) (Corker, MJ). Additionally, the Act serves "to safeguard the courts' role in adjudicating the guilt or innocence of defendants[.]" *Salerno*, 481 U.S. at 753; *Silvestre-Gregorio,* No. 2:18-CR-155-JRG-MCLC, Doc. 61, at 4. The Act provides four options to the judge presiding over an initial appearance in a criminal case: (1) Release the defendant on his or her own recognizance; (2) release the defendant on conditions; (3) detain the defendant temporarily "to permit revocation of conditional release, deportation, or exclusion"; or (4) detain the defendant until trial, if the judge finds, after a hearing, that "no condition or combination of conditions will reasonably assure" the defendant's appearance or the safety of others. 18 U.S.C. § 3142(a) & -(e)(1).

The Act permits the government attorney to move for pretrial detention of a criminal defendant in a limited number of circumstances. The government may request detention when the defendant is charged with a crime of violence, § 3142(f)(1)(A); an offense involving a maximum penalty of ten years or more in prison, § 3142(f)(1)(B); any felony if the defendant's criminal history includes convictions of two or more specific crimes, § 3142(f)(1)(C); or a felony involving a minor victim or the possession or use of firearms, § 3142(f)(1)(D). None of those circumstances apply in this case. The government may also request detention if the case involves "(A) a serious risk that [the defendant] will flee; or (B) a serious risk that [the defendant] will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten,

injure, or intimidate, a prospective witness or juror." 18 U.S.C. § 3142(f)(2). In the instant case, the Government moves for detention, arguing pursuant to section 3142(f)(2)(A) that Defendant Aleman-Duarte poses a serious risk of flight.

The Defendant contends that he cannot be detained, because the immigration detainer lodged against him prevents him from being a serious risk of flight. Alternatively, he argues that he does not present a serious risk of flight, because the "exceptional circumstances" necessary for an individual to be a *serious* risk of flight do not exist in this case. Finally, the Defendant asserts that even if the Court were to permit a detention hearing (i.e., to find that he is a serious flight risk), conditions exist that would reasonably assure his appearance for further proceedings in this case. The Court examines each of these arguments in turn.

## A. Serious Flight Risk

As stated above, the government may seek detention and the court may hold a detention hearing, if a criminal defendant presents a serious risk of flight. 18 U.S.C. § 3142(f)(2)(A). Defendant Aleman-Duarte states that Immigration and Customs Enforcement ("ICE") placed a detainer on him, while he was in state custody, and immediately detained him, when he was released from state custody on August 2, 2019 [Doc. 22, p.2].[2] He contends that he is not a serious flight risk, because he will remain in the custody of the federal government, if ICE enforces its detainer; his potential removal from the country is not volitional; and a finding of

---

[2] The Defendant came into the custody of the United States in this case on an arrest warrant issued by United States Magistrate Judge H. Bruce Guyton on August 5, 2019. The affidavit [Doc. 1, p.2] of ICE Deportation Officer Matthew Grooms, which was provided in support of a Criminal Complaint in this case, does not state that the Defendant was in ICE custody at the time of his arrest. Instead, the affidavit provides that the Defendant was "ordered released on parole by Tennessee Department of Corrections" [Doc. 1, p.2].

serious risk of flight requires "exceptional circumstances" that do not exist in this case.

Relying on the holding in *United States v. Mendoza-Balleza*, No. 4:19-CR-1-TRM-SKL-1, Doc. 40 (E.D. Tenn., May 23, 2019), the Defendant asserts that he cannot pose a serious risk of flight, because he will remain in government custody, if his immigration detainer is enforced. In *Mendoza-Balleza*, the Court held the defendant, who was charged with illegal reentry and for whom an ICE detainer and pending final order of removal existed, was not a serious flight risk under § 3142(f)(2)(A). *Id.* at 4. The government in that case acknowledged the defendant did not present a serious risk of flight, because if the Court did not detain him, he would be immediately detained by ICE and deported within ninety days, without first appearing in an immigration court. *Id.* at 3-4. Accordingly, the Court held that "as long as [Defendant Mendoza-Belleza] remains in the custody of the executive branch, albeit with ICE instead of the Attorney General, the risk of flight is admittedly nonexistent." *Id.* at 4.

The undersigned finds the instant case to be factually distinct from that in *Mendoza-Balleza*. Here, the Government does not concede that Defendant Aleman-Duarte is not a flight risk. *See Silvestre-Gregorio*, No. 2:18-CR-155, Doc. 61, at 7 (distinguishing *Mendoza-Balleza*, because the government did not concede that the defendant poses no risk of flight). Instead, the Government emphatically argues [Doc. 27] that Defendant Aleman-Duarte poses a *serious* risk of flight, because he is charged with illegal reentry and faces removal, has no legitimate defense to the illegal reentry charge, has no community ties or employment, and has previously used an alias to avoid detection. Moreover, unlike in *Mendoza-Balleza*, it is not apparent that Defendant Aleman-Duarte will go immediately into ICE custody and be deported within ninety days. First, the Court observes that the existence of an ICE detainer "is not custody. A detainer is merely a

request by ICE for the court to hand over the defendant when the court's business with that defendant is concluded." *United States v. Cornejo-Garcia*, No. 3:19-CR-90-LJM-HBG, Doc. 13, at 5 (E.D. Tenn., June 6, 2019) (Inman, MJ) (citing *Rios-Quiroz, et al. v. Williamson County, Tenn.,* No. 3-11-1168, 2012 WL 394354, *4 (M.D. Tenn. Sept. 10, 2012)). Second, it does not appear that an order of removal exists for this Defendant, as it did for the defendant in *Mendoza-Balleza*. Finally, the Court notes that an ICE officer was the affiant on the affidavit supporting the criminal complaint, which provided the basis for Defendant Aleman-Duarte's arrest in this case. The fact that the Defendant was brought into federal court on the sworn affidavit of an ICE officer suggests that ICE does not intend to deport the Defendant immediately.

Next, the Defendant pivots from arguing that the ICE detainer provides the basis for releasing him because he will inevitably remain in government custody, to arguing that the Court should not consider the ICE detainer or his illegal status at all. The Defendant argues that Congress did not list citizenship as a factor in the Act and, thus, the Defendant must be treated the same as a citizen for purposes of detention or release. *United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167, 1174 (D. Ore. 2012). He also contends that the existence of an ICE detainer should not weigh against him, because the risk of non-appearance through involuntary deportation would be caused by the government's actions, not his own volitional acts. *See United States v. Barrera–Omana*, 638 F.Supp.2d 1108, 1111 (D. Minn. 2009); *United States v. Montoya-Vasquez*, No. 4:08-CR-3174, 2009 WL 103596, at *5 (D. Neb. Jan. 13, 2009). The Defendant asserts that the failure to appear under the Act relates only to the risk that a defendant will choose to flee or abscond and not to a situation in which he cannot appear due to ICE preventing his appearance.

The undersigned agrees with Judge Corker in *Silvestre-Gregorio*, that the Court

may consider the presence of an ICE detainer but that it is only one "factor in the analysis. It is

not dispositive. It neither mandates release nor compels detention." No. 2:18-CR-155-JRG-

MCLC, Doc. 61, at 7-8. "[M]ost courts have concluded the existence of an immigration detainer

is a relevant factor for consideration when the court undertakes its assessment of a defendant's risk

of flight." *United States v. Valadez-Lara,* No. 3:14 CR 204, 2015 WL 1456530, at *6 (N.D. Ohio

Mar. 30, 2015) (collecting cases); *see also United States v. Ramirez-Salguero*, No. 2:18-mj-30606,

2018 WL 6321918, at *3 (E.D. Mich. Dec. 4, 2018) (considering ICE detainer among other factors

and finding non-citizen defendant with ICE detainer has "a strong incentive to flee to avoid

deportation"); *United States v. Salas-Urenas*, 430 F. App'x 721, 723 (10th Cir. 2011) (holding that

a "defendant's immigration status and the existence of an ICE detainer are relevant to the detention

decision as part of the history and characteristics of the defendant").[3] Moreover, the Court

observes the Act expressly compels the Court to consider whether the defendant is a citizen in §

3142(d)(1)(B), which requires court to detain the noncitizen defendant temporarily to give ICE the

opportunity to take him or her into custody and, failing that, to treat the defendant "in accordance

with the other provisions of" the Act.

Finally, the Defendant argues the fact that he is subject to an ICE detainer is not the

---

[3] In the cases cited by the Defendant, the courts agreed that an ICE detainer is but one factor to consider. *Barrera–Omana*, 638 F.Supp.2d at 1112 (concluding that "[w]hile the defendant's illegal status must be considered, the mere presence of an ICE detainer is not a determining detention factor"); *Trujillo-Alvarez*, 900 F. Supp. 2d at 1174 (finding magistrate judge properly considered all the factors in 3142(g)); *see also Montoya-Vasquez*, 2009 WL 103596, at *5 (finding that "if the risk of removal by ICE is cognizable at all, it would be only as one of many factors"). The Court also notes that in all of these cases, the courts did not hold that a detention hearing was unwarranted.

type of "extreme and unusual circumstance" that causes a defendant to be a serious risk of flight. *See United States v. Abrahams*, 575 F.2d 3, 8 (1st Cir.) (finding, prior to the enactment of the Bail Reform Act, an escaped felon who previously fled while on conditions exemplified the "extreme and unusual circumstances that justifies pretrial detention without bail"), *cert. denied* 439 U.S. 821 (1978). In this regard, Defendant argues that illegal reentry is a non-violent crime, that he has no history of failure to appear or escape, and that he has a history of being out on bond and appearing for court while released from ICE custody on an immigration bond in 2002. The Government contests this characterization of the Defendant, arguing that the Defendant's impending removal from the country and prior use of an alias reveals that he is a serious risk of flight. First, the Government argues that the Defendant has a strong motivation to flee, because his options are to be deported immediately or to be deported after serving a term of imprisonment. Second, the Government argues that the Defendant is a serious flight risk because he has previously used aliases to avoid detection by law enforcement and immigration authorities.

The Court finds that the Government has shown Defendant Aleman-Duarte to be a serious flight risk. First, the Court finds the Defendant's return to this country, despite his prior removal, indicates a disregard for the immigration court's removal order and suggests that he would not abide by the requirement that he appear for proceedings in this Court. Additionally, the Court observes that the "use of aliases strongly suggests a serious risk of flight." *Silvestre-Gregorio*, 2:18-CR-155-JRG-MCLC, at 7 n.3 (determining that use of nine aliases and three birth dates indicates defendant is a serious risk of flight); *see also United States v. Vysniuaskas*, No. 10–20717, 2011 WL 5433960, * 9 (E.D. Mich. 2011) (holding that the defendants' "status as illegal aliens and use of aliases allowed them to avoid detection by law enforcement"). At the motion

8

hearing, defense counsel stated the fact that Defendant was known by a different combination of his names in immigration court is not attributable to him and does not suggest that he is a flight risk. However, the Government states the Defendant's A-file, which was produced in discovery in this case, reveals that he has used the alias "Ricardo Lopez-Aleman" [Doc. 27, p.4 n.1]. The Court finds that the Defendant's use of this alias reveals that he is a serious flight risk. Accordingly, the Court finds that a detention hearing is appropriate in this case, because Defendant Aleman-Duarte presents a serious risk of flight under § 3142(f)(2)(A).

### B. Consideration of § 3142(g) Factors

Finding that the instant case is one in which the Government may request detention and that a detention hearing is appropriate because the Defendant is a serious flight risk is only the first step in the analysis. After finding a detention hearing is appropriate, the Court must determine "whether there are conditions of release that will reasonably assure the appearance of the [Defendant] as required and the safety of any other person and the community[.]" 18 U.S.C § 3142(g). In making this determination, the Court must consider the available information relating to (1) the nature and circumstances of the charged offense; (2) the weight of the evidence against the Defendant, (3) the Defendant's history and characteristics, and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [Defendant's] release." 18 U.S.C § 3142(g)(1)-(4). After considering the § 3142(g) factors along with the information presented at the motion hearing, the information in the amended Pretrial Services Report, and the parties' supplemental briefs, the Court finds by a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure Defendant Aleman-Duarte's appearance as required.

With regard to the nature and circumstances of the charged offense, the Defendant is correct that illegal reentry is not a crime of violence, nor does it involve a minor victim, terrorism, a controlled substance, a firearm, or an explosive device. *See* 18 U.S.C. § 3142(g)(1) (listing categories of crimes that weigh in favor of detention). However, the Court finds that the nature of the crime—returning to the United States, despite prior removal from this country by court order—indicates that the Defendant is not disposed to follow the orders of this Court. Accordingly, the Court finds this factor weighs in favor of detention.

The second factor looks to the weight of the evidence against the Defendant. The Government argues that the evidence against Defendant Aleman-Duarte is "overwhelming," because the Defendant was deported in 2003, he was found in this country again, and nothing indicates that he has permission to be here or has any other defense. The Government contends that the inevitability of his removal from the country supports a finding that he is unlikely to appear as required. In *Silvestre-Gregorio*, Judge Corker found that a defendant facing mandatory deportation has an incentive to flee to avoid being deported. No. 2:18-CR-155-JRG-MCLC, Doc. 61, at 9. Similarly, in *Cornejo-Garcia*, Judge Inman found that the certainty of mandatory deportation and the severity of the potential maximum sentence for illegal reentry indicate that the defendant is a flight risk. No. 3:19-CR-90-PLR-HBG, Doc. 13, at 6. The undersigned finds the weight of the evidence against the instant Defendant and the inevitability of removal also provides a motive for the Defendant to flee prosecution. Accordingly, the Court also finds this factor supports detention.

The Act also requires the Court to consider the Defendant's history and characteristics. 18 U.S.C. § 3142(g)(3). The Defendant argues that he has strong family support,

a long presence in the community, minimal criminal history, and a history of appearing while released on bond. In this regard, he states that he was released from ICE custody on an immigration bond in 2002 and appeared for court, despite the likelihood that the court would order that he be deported. The Defendant asserts that his cousin Liliana Vessy-Herrera will allow him to stay with her in her home in Philadelphia, Pennsylvania. He maintains that Ms. Vessy-Herrera and his daughter are willing to transport him to this District for court appearances.

The Court respectfully takes a different view of Defendant Aleman-Duarte's history and characteristics. The Court finds the Defendant has minimal ties to this District. The Defendant reports one of his five children lives in Tennessee and that he has siblings in this state, although he did not tell the interviewing Probation Officer the names of these individuals or where they live. The Court observes that the Defendant lived in Philadelphia for ten years from 2003 to 2014 and was incarcerated from March 2016 to August 2019. These facts reveal that the Defendant has limited ties to this community. The Court also finds Defendant has no known financial resources, is not employed, and is unlikely to get a job, due to his status as an illegal alien. Moreover, his most recent criminal conviction was for the aggravated kidnapping and sexual battery of a coworker at the hotel where he and the victim were employed.

With regard to other characteristics, although the Defendant reported no current or past substance abuse, he has three convictions for public intoxication and two additional arrests for public intoxication for which the disposition is unknown. The Defendant also has convictions for sexual battery and aggravated kidnapping from 2016, when he was fifty-four years old. Thus, although the Defendant has limited criminal history, the Court finds it to be both recent and significant. Finally, and importantly, the Court observes that the Defendant has an ICE detainer

and previously used aliases to avoid detection by law enforcement or immigration authorities. The Court finds the Defendant's lack of connection to this District, likely inability to gain employment in Pennsylvania, and previous use of aliases show him to be a flight risk and weigh heavily in favor of detention. Although the Defendant argues that he appeared for court while on an immigration bond in 2002, the Court finds this laudable conduct to be countered by his disregard for the immigration court's removal order, when he reentered this country in violation of that order.

Finally, the Court considers the nature and seriousness of the danger that the Defendant poses to others or the community. *See* 18 U.S.C. § 3142(g)(4). As discussed above, the Defendant committed aggravated kidnapping and sexual battery of a coworker in 2016. This fact causes the Court concern about releasing him to live with his cousin and her four children. Accordingly, the Court finds that the fourth factor also supports detention in this case.

The Court finds by a preponderance of the evidence that the Defendant is a risk of flight. The Court has considered the conditions proposed by the Defendant, namely that he live with his cousin and her family in Philadelphia, Pennsylvania. The Court finds this proposed living situation to be unsuitable, because it believes Ms. Vessy-Herrera's admitted illegal status would make her reluctant to inform the Defendant's supervising Probation Officer or the Court, if the Defendant violated his conditions. Defense counsel stated at the motion hearing that although the Defendant has family in this district, she advised them against housing the Defendant, due to their lack of citizenship. The Court finds Ms. Vessy-Herrera is not a good candidate, particularly for third-party custodianship, for the same reason. Accordingly, the Court finds the proposed conditions do not reasonably assure the Court that the Defendant would not flee.

12

## II. CONCLUSION

For the reasons discussed herein, the Defendant's Motion for Pretrial Release [**Doc. 22**] is **DENIED.** The Defendant is **ORDERED DETAINED** pending his trial. The Defendant is committed to the custody of the Attorney General or his designated representative for confinement in a correction facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The Defendant shall be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

**IT IS SO ORDERED.**

ENTER:

Debra C. Poplin
United States Magistrate Judge